Judge Jordan and I are pleased to have Judge Jean E.K. Prater of the United States District Court for the Eastern District of Pennsylvania sitting with us today. Judge Prater and I practiced at the Dwayne Morris Law Firm for many years together and it's nice to have her helping us. So thank you, Judge Prater. Nice to be here. Thank you. I'm going to have our first case, Ed Salima v. Toby Hanna, Army Depot et al. My name is Cindy Pollack and I represent Ed Salima, the appellant. I reserve two minutes for rebuttal. That's fine. This case basically comes down to three questions. Two of the questions I would submit are first impression questions for this court. The first question is not. It's whether there was sufficient evidence to allow the retaliation claim to be submitted to the jury based on the fact that my client had shown evidence that he did have a good faith belief in requesting accommodation. And the other two questions would be first impression questions for the court. One would be whether you consider treating treatment when you look at whether someone is disabled and if you do, what test do you apply? And the third question would be. When you say treatment, you mean medications in this instance? Yes. And the last question would be what test is used for a joint employer? Why should we not adopt the Christian standard and I guess that would present problems for your client because the medications were discontinued, but why is that not an appropriate standard when we're talking about the medications as creating the disability? You can use that standard. Our position is that that standard was wrongfully applied in this case. Viewing the facts in light most favorable to us, Mr. Salima certainly had a condition. His medication was necessary, was prescribed, had been prescribed. Can you help me out, Ms. Pollack, when you say his medication was necessary? That's where it looks like the rabbit goes into the hat because the assertion we're getting from the other side is, I think, even if some medication were necessary, there was not a particular medication he had to be on that would have this side effect. And in your briefing, I'm trying to find it, but there was a place where you said something like prescribing a new weight loss drug when others are ineffective leads to a conclusion that while no single drug was necessary, drug treatment itself was necessary. If that's true, if no single drug was necessary and you could move between drugs, explain how that isn't fatal to your argument here. Okay, I would explain it as he has morbid obesity and sleep apnea. He needs to lose weight. It's a medical condition. And no matter what medical medication a doctor prescribes, this was prescribed. He had been on Xenical for four years. Sure, but your assertion here, as I understand it, is not that the disabling condition was the apnea or the obesity. It was the gastrointestinal effects of the medication, correct? No, only because although I'm not saying his sleep apnea, which I think can be disabling because you can't, you could die in your sleep, but nonetheless in this case we are asserting that his gastro condition along with his sleep apnea, those were both in the complaint. In order to treat his underlining condition of obesity, he has to take medication. It's prescribed by a doctor. It's unlike... I don't think I'm getting through, so let me try one more time, and I apologize. Assume for the sake of discussion that we accept that there's an underlying disabling condition, that we accepted for purposes of discussion that obesity was pled and apnea was pled and that they are disabling, but my understanding is that that's not what this fight is about. This fight is about the side effects of the medication that he was taking associated with what you're saying are disabling conditions. So my question to you is, if you acknowledge, as your brief appears to acknowledge, that no single medication was necessary and there were medications that didn't have this side effect, isn't that an acknowledgement that the side effect is not a disabling condition? No, because number one, I was on Xenical for four years. My doctor says we're changing it. No employer should say, you need to change it back to the one that wasn't working for four years because you're still morbidly obese, you still have sleep apnea. No employer should have that control to tell us what medications we should and should not take. But that's not the record. The record here is that when he realized that this was a problem, he went to his doctor and his doctor took him off the medication and basically said, he's not on the medication anymore. He'll be just fine. He won't need to use the bathroom like this anymore. So what evidence is there that there is a drug that is medically necessary, i.e. that he has to have, that causes this condition? Which drug is it? There's Tenuate, there's laxatives, these were all prescribed. It wasn't that- But he took them off of them. Didn't the doctor take him off of them? Only because he was going to lose his job. He had no choice. He was faced with either I stop taking my medication for my health- So you're saying the doctor did something contrary to the Hippocratic Oath, if you will, by saying, by taking him off medication that he absolutely needed and saying he really would be just fine. No, I don't think he's violating his oath that when a patient comes to you and says, I'm going to lose my job if you don't take me off all medications because they're not, it's going to be a hard time. What does medically necessary mean? Medically necessary means is a doctor says that you have to have some medicine because you have a condition that is medically necessary. That's why I think- That's right. I think where we're having the trouble is that the record is elusive as to where it is that you can point to that there is some debilitating, medication has a debilitating side effect that was necessary because the record suggests that the doctor was for whatever reason willing to tinker with the medication. He had been on Xenical for four years and then where the problem arises is that he becomes and what he was prescribed Tenuant. If you just look at what the doctor says, however, samples are given out by a doctor and the doctor freely admitted that and he was given a laxative. All he needed was to be allowed to use the restroom. That's all he needed. He still got his work done. But the other, doesn't the record suggest that the doctor said, fine, we'll take him off the medication for a bit and that's all we know. And that's all we know. He should just stop eating. That's all we know. We should not, an employer should not put us in a position that we have to stop being treated for a medical condition when it has no problem. I'm okay. I can deal with the side effects of this medication. I just need to go to the bathroom more frequently than the norm. When you say that the employer shouldn't make me not be treated, I guess that's the what the record says. The employer said you have to not be treated. What the record does say, here's your client's words. Your client says, at this time I'm on medication that makes me use the restroom more than I should. I'm going back to my doctor to see if he can give me a different medication that won't make me go to the restroom as much. Then it goes on, skipping a little bit. I realize that this has been a problem and I will resolve this problem as soon as possible. I didn't mean for the situation to get out of hand. Now, I'm not sure how you read that except to say, here's a guy who's interested in keeping his job and who recognizes there is a problem with his job and who believes he can work with his doctor to find a medical alternative. Isn't that what that says? He is hopeful that he can find a treatment that doesn't require him to go to the bathroom as frequently. And the doctor, in fact, gives him some different course and in his testimony says, yeah, you can switch these things around. So that's the record we're looking at. Help us see what you're relying on in the record that says there was a medically necessary drug and these people pushed him off of it. My client testified, and that's just one piece of evidence. If you look at all these evidence and infer in our favor, that should have been a question that a jury decides. But he had stated that they required him, don't come into work, don't come into work. This was before he had the December 9, 2005 slip that said I'm 100%. They said, you can't come into work. You should go on short-term disability. That is employer having a problem with the medicines that he's on. He's still 100% productive. You just have a problem with the fact that he is going to the bathroom. He's still getting his work done. I think we understand what the human side of your argument is. But let's go back to your issue that you think that it's okay to use the Christian test, but here your argument is that it wasn't properly applied. Are you suggesting that it would be too, almost an impossible threshold to require your client to prove that every single conceivable medication would put him in this bad position? Yes, based on- So you're saying that that's how the district court applied Christian? Yes. And if you look at the Sutton case from the Supreme Court, it says you shouldn't focus on shoulda, wouldas, and the mights. Here we have someone who was already prescribed medication, unlike the Christian case, which it was a blood cleansing thing. The individual was not actively having that procedure done. How you differentiate the Christian case from our case, my guy was already on medicine. By the time that this became an issue, it wasn't that, oh, he might need this medication. He was already on it. So I think we can reach the Christian threshold if the court decides that that's the proper- So you have no trouble with the Christian test? You think that's a perfectly fine case to follow? Just that it wasn't followed properly here? I think my looking at it is, look at the Supreme Court. The Sutton case is the best case for us because you look at the treatment of a medical condition. And oftentimes, employers escape liability because you look at treatment. How come I can't look at treatment in this case, which shows that my guy is disabled because of the fact he has to go to the bathroom. When he comes into a building, he has to scour the vicinity to find the bathroom. Most people don't have to do that. He is different than the general population, and it's because his underlying conditions of obesity and sleep apnea. So you want us to focus on Mr. Salim's individual experience? Correct, and that's what Sutton states. And was there enough for us just to get to the jury? We're not asking to win. We're only simply asking to get to a jury to be able to show this case to the two-eight jurors and have them decide. The issue of fact is what? The issue of fact is that, is he disabled? And we have presented sufficient evidence that he was prescribed medicine at the time that required, that made him go to the bathroom. So it comes down to, I mean, it's fair to say, isn't it, that the central issue is whether the medicine was medically necessary, right? To me, you have to look at that. You can't just singly say one little thing. You have to look at the whole, his whole situation, so. What other situation do you want us to look at? See, I'm trying to pin down, because I think it's doable, what the issue is that you think needs to be decided by a jury. I mean, you wouldn't go to a jury and say, this is a very sad case. You'd have to go to a jury and say, this is how this man's case meets the legal definition of a disability. My understanding from your argument before the district court, your briefing here, and your argument to us today is that the disability point is, and therefore the only issue as to which a fact would be genuine and material is, is the medication medically necessary that he's on? Treatment, which includes medication. Other than the medication? Is there anything in the record about a treatment that's different from medication? Yes, he had a apparatus for sleep that he had to use. That would all go into the fact that he's disabled. But that's not the only issue here. I'm looking also at the retaliation claim. That had nothing to do with going to the bathroom at work. Right, I mean, breathing at night had nothing to do with going to the bathroom at work. Well, it did, because of the fact that I'm overweight. And it's hard for people to understand, because if you're not overweight, you don't know the struggles that people who are obese go through. And so, it was because of his sleep apnea, because of his obesity, that required the medical treatment, which he was on for four years. Whether the treatment changes over time, that is not an issue, because the fact that the doctor testified that he needed it is sufficient for us to get to a jury. Because we are allowed to show an issue of fact. But not only am I arguing that issue, but also the fact that they regarded him as disabled. They put him, they wanted him to go on short term disability. That should get us to a jury, in this case. Retaliation, a good faith belief. As a matter of law, you shouldn't, I had evidence that he submitted a note that was authenticated. There's no issue there. How do you say that he, you know, that wasn't a good faith belief? You have to give us the benefit of the doubt, the non-moving party. Okay, we'll hear from you on rebuttal. Thank you. Good morning, my name is Kate Mershmer. I'm representing the federal appellees, the Department of Army and Toby Hanna Depot. I was provided with three minutes this morning to address the issue of joint employment. Our position has really been set forth fully in our brief, so I would like to rely upon that, but address any particular questions the court would have about joint employment. I'd like you to respond, if you would, to page 24 of the reply brief in the case, where the plaintiff says that Toby Hanna is incorrect in its conclusions regarding the fact alleged by Salima. In his complaint, Salima asserted that Toby Hanna forced him to take a layoff. This is not a legal conclusion, it's a factual allegation. It must be regarded as true, evaluated to see if it can properly support the conclusion Toby Hanna was his joint employer. What's your response to the assertion, both factual and legal, that as a fact, they forced him to take a layoff? And second, that that's a factual assertion, not a legal conclusion, which we need to accept as true and which could lead to the conclusion that there is or was joint employment. Well, applying Twombly-Iqbal in this court's filer decision, you separate the legal arguments from the factual. I would say that is a factual assertion that they forced him to take a layoff. But what I would say is that that's not enough to meet the elements to establish that there was significant control over the same employees or that Toby Hanna co-determined the essential terms and employees. What's the record as to what they did that might constitute, might or might not constitute forcing? Well, in honesty, your honor, the record doesn't establish that Toby Hanna forced him to take a layoff. Toby Hanna met with- It communicated with the contractor, correct? Yes, they met with DS2. They said, we're not happy with him in this section. We'd like him to be out of this section. Would you consider a transfer of him? And then they were told it would be dealt with, and the next thing they know, they're being told that he took a layoff. I also think the record reflects that it was a voluntary layoff by Mr. Salima, but. But anyway- So you think which element, which necessary element's not been met as to your client? They have not met the element that if you're going to establish joint employment, you have to allege enough facts to show that Toby Hanna exercised significant control over these employees to say that they were the essence of the employee. If you look at the Graves case, there were allegations that the county paid the person's salaries, that the county selected some of the individuals, that the county covered them with their personnel policies. The county told them that they were employees. Is there any evidence here that as a result of that meeting or based upon some agreement or as a matter of law, what Toby Hanna said to the contractor was something the contractor had to do? There's nothing in the record reflecting that Toby Hanna had to do it. In fact, when Mr. Morgan, who's the one that said that we'd like to have this employee transferred, and he talked to his point of contact within Toby Hanna and said that, asked her, like, do something about this. She said, look, this is DS2's issue. This is their responsibility. They have to decide where to apply it. And that was in her affidavit, which begins at page 209. All right, we'll look at your brief for the rest of the information. Thank you, Your Honors. Thank you. May it please the court, my name is Stephanie Lewis. I'm here on behalf of Appali Defense Support Services, referred to throughout the briefing as DS2. Your Honors have highlighted the critical issue in this appeal with respect to the disability discrimination claim, which is whether the medical treatment that caused the alleged disabling limitations was medically necessary. Is it appropriate for us to assume that doctors prescribe medication that is medically necessary such that when the doctor prescribes it and then takes it away, there is at least an issue as to whether it's medically necessary because it was prescribed in the first place? That would not be an appropriate assumption because you have to look at the record evidence of what the doctor said was medically necessary. And the doctor here said that there was treatment for obesity that would not cause these limitations, that he had used effectively before. And in fact, there's no evidence in this record that anything that the doctor prescribed would have caused the limitations complained of here. Couldn't the argument have been that the earlier medication wasn't effective and so the doctor and the patient continue looking for something effective? That would not be an argument, Judge Prater, that's borne out by the record. Dr. Fasciano's testimony is very clear that the previous treatment had been effective. In 2003, Mr. Salima was on Meridia and he lost 40 pounds on Meridia. And Dr. Fasciano was very clear throughout his testimony that these medications are interchangeable, equally efficacious, and that if he had known of a problem, he would have discontinued it. And in fact, that's exactly what he did as soon as he became aware of the problem. How far does Christian go? Does it say it has to be medically necessary and, oh, by the way, it has to be more medically necessary than some alternative treatment, has to be the only medically necessary, or is the threshold that it has to be medically necessary sufficient? Christian requires both that it be medically necessary and that there be no less restrictive alternative that one could elect that would treat the condition. And that, by the way, is entirely consistent with Third Circuit law on election of less restrictive alternatives when we're talking about medication choices. And, I mean, it's consistent with the diabetes cases. If somebody has a condition, let's say asthma. Sure. And they don't, they can get by without using an inhaler. And, but then suddenly, would you then say if they can get by usually without the inhaler, that that's, that for them to use an inhaler at some, during work hours, it gets in the way of their work, that's not medically necessary? Well, what you've just asked did not, didn't give us enough information about what the medical provider believes is medically necessary and what the medical provider believes are the less restrictive alternatives. Judge Conaboy's decision does not require you to go so far as to reject the learned decisions of the medical profession. But do you think that the Christian, that Christian would require somebody to take the, to take less effective medication because it wouldn't interfere with work? In the medical judgment. Not the person's judgment, but in medical judgment. And here, the medic, yes, I'm sorry. Yes. If there's medical evidence that there's a less restrictive alternative. How about less effective? I don't believe Christian. Is less effective equal less restrictive? I don't believe Christian requires that result. And I don't believe you're required to reach that result here. Because the medical evidence was that the medications were all equally effective. Can I ask you a question about the retaliation claim? Yes. The assertion made by your opponent is that even if he isn't disabled, you regarded him as disabled. And the strong evidence of that is you suggest he go on disability. Told him to take a disability leave. And therefore, you know, this argument about equally effective meds is in a sense all academic. Because there's another basis on which liability could be based. What's your response to that? In terms of the regarded as claim, there are several Third Circuit decisions that have already rejected the proposition that a suggestion or statement about short term disability, which is the statement here, could equate to a perception that the person was disabled within the meaning of the ADA. And on this point, it's important to note that the ADA amendments of 2008 do not apply in evaluating the perceived as claim. And that the law and the courts that have evaluated that have said that there was not a clear statement of retroactive intent. And in the Third Circuit, the courts have looked at the regarded as claim in the context of statements about going on short term disability and have correctly acknowledged that a statement of going on short term disability is not coterminous with disability within the meaning of the ADA. In what case are you relying on for that specific proposition? The specific proposition is in a district court case in the Third Circuit that was affirmed by the Third Circuit. And I have it in the brief, I believe, on the page for you. That's all right. So what do you make of the statement just made in oral argument by Ms. Pollack that his own words, which we have to take in the light most favorable to him, show that he certainly perceived that he was disabled? Because that's another part of Judge Connaboy's decision that he couldn't reasonably have thought he was disabled. But that's just not so when he said the things he said. It reflected that he thought he had a disabling condition. What's wrong with the claim that Judge Connaboy started assuming things against the plaintiff instead of in favor of the plaintiff on summary judgment? Again, that's not borne out by the record. In terms of the retaliation claim, which is what we're discussing when we're discussing the good faith belief about whether he had a disability, Judge Connaboy correctly noted that to have engaged in protective activity for the purposes of establishing a prima facie retaliation claim, he would have to show that both he had a good faith belief that he was disabled and that DS-2 understood from what he communicated to DS-2 that he believed he had a disability and was requesting assistance from him. Right, and Judge Connaboy said, you handed a note in that said, I've got this problem, I'm going to the bathroom. Nobody could have understood that to mean you thought you had a disability. Why couldn't a jury have looked at that and said, that showed he thought he had a disability? Because in the Taylor case in the Third Circuit, the Third Circuit has already acknowledged that whether it's a request for reasonable accommodation depends on the prior notice and knowledge that the employer had regarding the condition and whether the employer would have believed that the individual was requesting assistance. Now you're talking about what the employer believed. The question is, what does he believe? Well, what he believed and what the employer believed, again, are coextensive in this case. His statement to the employer prior to turning in that doctor's note was, I'm not sick. And that was when in October 2005, he was approached by Joe Johnson, his team lead, and Joe Johnson said, we understand you're away from your workstation frequently and for excessive periods of time. What's going on? And Salima responded to him immediately before turning in a doctor's note by saying, I'm not sick, it's a medicine that I am taking. Then Joe Johnson said, bring back a doctor's note about the medicine. The doctor's note was simply in response to that request and only said, due to a gastrointestinal condition, Ed may need to use the bathroom more than the usual. At the same... Clearly, clearly your client was aware of the need to use the bathroom before because that's what set all this in motion. But remember that for protected activity, for a request for an accommodation, it's not enough to be aware of a need for assistance. You must believe that there's a disabling condition that requires the need for assistance. He's already said, I'm not sick. He turns in a doctor's note and then he, at the same time, answers some questions about the doctor's note in writing, which Judge Jordan read earlier. In his own words, he says again, I'm not sick. It's medicines that I'm taking and I will go back to my doctor and we will look at changing them. He did not... Well, that takes us back to the original issue. Is it enough if the side effects of the medication create the difficulty? Well, there's no case that says that a side effect of a voluntary medicine that's not medically necessary, that the doctor doesn't even believe is medically necessary, could be enough to create a disability or to state a claim for retaliation. So that's really what this is about. It's a fairly simple case on this record of medicine that he voluntarily chose to take that was not medically necessary, that the doctor did not say was prescribed or would cause the limitations, and that the doctor, in fact, removed him from as soon as he knew there was a problem. And the doctor was very clear that he would have stopped the medication if he had known there was a problem earlier. In this situation under Christian, if you assume he had a condition, we've preserved all the arguments that he doesn't have a condition, but regardless of which test you apply, you end up at the same place, that this treatment that caused the limitations was not medically necessary. Counsel, and I may not be reading correctly, but in Christian they talk about disabling treatment be truly necessary, not merely an attractive option. Is that what you mean when you say least restrictive? Or does it use that language, least restrictive? No, the not truly an attractive option is the language that means... Truly, disabling treatment must be truly necessary and not merely an attractive option. Okay, and then it says it obviously can't be a consequence of the voluntary choices. Exactly. And just to build on that point briefly, Judge Rendell, I mean, in the Third Circuit and in every circuit to address the issue, the cases have held that if you are choosing to either not take medicine or take medicine that's causing a disabling limitation, when you could elect a different course that eliminated the restriction, then you don't have a disability. So that's consistent with well-established law. It doesn't require you to reach into an area of first impression. I would, in my few minutes remaining, just like to also note that there are several alternative bases for affirming Judge Conaboy's well reason, 37-page order, and DSU respectfully requests affirmance on all counts. Thank you. Ms. Pollack. Thank you. They regarded him as disabled when they told him to go on short-term disability. They're trying to create an issue with a short-term disability, but prior to being a lawyer, I was in human resources, and what does an employee have to do? They always have to go on short-term disability before they go on long-term disability. What is the case law? I believe there's an NPO cited by your colleague or your opponent, but I'm not sure about, is there a Third Circuit precedent about the impact of the concept of telling someone to go on short-term disability? The case that they cite was, I think, I don't know if it was from the New Jersey District Court, but it was affirmed by this court. However, there was no published opinion. Right, well, it's a Lockheed case, I think. So to me, you have to look at, they told him, don't come into work, you should go on short-term disability. Isn't that saying, or doesn't that raise an issue of fact that only a jury could decide whether he's disabled or not because of the fact that you're telling him not to come into work? You think he has a condition. Isn't that the essence of regarded as? But the regarded as has to be regarded as disabled, meaning a long-term disabling condition. And it was in this case because they laid him off. It was or was not? It was. Why? Because they had all these jobs that have been open over the years, 120 some, just in 2006 alone, had they once picked up the phone and called my client and said, hey, we have another position for you. Has he once picked up the phone? Pardon? He always has asserted. He didn't pick up the phone. I'll answer your question. However, he was pleading for them. I like my job. I don't want to lose my job. If a employer kicks you out. You fast forwarded us in time. I guess since you fast forwarded us in time, you say they never called back. I mean, it's equally fair to say he never called back either, right? To me, I think the employer, when you lay someone off, you have an obligation to recall. As a factual matter, he never inquired, right? As a factual, he never met. But you should not be using that against me as a plaintiff. You should be giving me the benefit of the doubt and putting that the employer should have called him because you had over 100 jobs in the next year that became available. Why didn't you call me? If you infer the facts in light most favorable to me. Can I just respond to the Christian test aspect of it? Quickly, please. Okay. It was medically necessary because the doctor prescribed it. Unlike if I want to lose weight because I want to get into a dress on Friday night, I go out to the supermarket, get DextraTrim and want to lose those five pounds so that I can get into the dress. That is not being medically required or necessary. In this case, he went to a doctor. He's been struggling with these conditions, still struggles, and they were prescribed by a doctor. That should at least get us to adjourn. Thank you. Thank you. Thank you, counsel. The case is well argued. We take it under advisement.